Tim A. Tarter, Esq. (*Pro Hac Vice*)
WOOLSTON & TARTER, P.C.
Building 4, Suite 1430
2400 East Arizona Biltmore Circle
Phoenix, Arizona 85016-2114
Telephone (602) 532-9197
Facsimile (602) 532-9193
tim@woolston-tarter.com
Lead Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| MICHAEL J. CONWAY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:08 CV 201 |
| | ) | JURY |
| vs. | ) | |
| | ) | |
| United States of America, | ) | **PLAINTIFF MICHAEL J.** |
| | ) | **CONWAY'S FIRST AMENDED** |
| Defendant. | ) | **COMPLAINT FOR REFUND OF** |
| | ) | **TAXES PAID** |

For his First Amended Complaint against Defendant, Michael J. Conway, through undersigned counsel, comes, appears, and respectfully represents that:

GENERAL ALLEGATIONS

1.  The Plaintiff in this action is Michael J. Conway, currently residing in Plano, Texas, Social Security Number xxx-xx-4264.

2.  The Defendant is the United States of America (Internal Revenue Service).

3.      This action arises under the provisions of 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422 for the recovery of taxes paid and abatement of tax amounts assessed against Plaintiff under 26 U.S.C. § 6672.

4.      Plaintiff is the former Chief Executive Officer (CEO) of National Airlines, Inc. (herein the "Company").  Headquartered in Las Vegas, the airline struggled to become profitable in a highly competitive market.  On December 6, 2000, the Company was forced to seek federal bankruptcy protection.

5.      The Company was in the process of successfully reorganizing under federal bankruptcy protection when the terrorist events of September 11, 2001 occurred.

6.      Immediately following the terrorist attacks of September 11th, Congress passed the Air Transportation Safety and System Stabilization Act (herein the "Stabilization Act").  Recognizing the severe impact of the attacks and their aftermath on the airline industry and the Nation's transportation infrastructure, Section 301 of the Act deferred the pre-existing deposit due dates for federal transportation excise tax payments.

7.      The Stabilization Act allowed and encouraged airlines to delay payment of their excise tax payments due after September 10, 2001 and before November 15, 2001, until November 15, 2001.  The IRS later approved an additional deferral to January 15, 2002 (for taxes due between September 10, 2001 and January 15, 2002).  Effectively, Congress and the IRS permitted the non-payment of federal transportation excise tax deposits and payments for the third and fourth quarters of 2001.

8. The purpose of the Stabilization Act and its excise tax deferral was clear — to provide airlines with desperately needed operating capital, thereby protecting the airline industry, the Nation's transportation system, and the economy as a whole.

9. President Bush signed the Stabilization Act into law on September 22, 2001.

10. The Company, upon advice of counsel, fully availed itself of the Stabilization Act's provisions, which allowed and encouraged the use of its federal excise tax reserves, normally held in trust for the Government, for its operating expenses.

11. Despite the financial assistance provided by the Stabilization Act, however, the Company was unable to successfully reorganize in bankruptcy and repay the excise taxes deferred by Congress following the September 11th attacks.

12. When the Company was unable to repay its excise tax obligations, *inter alia*, for the third and fourth quarters of 2001, the IRS sought payment from Plaintiff.

13. On or around March 14, 2003, the IRS notified Plaintiff of the Proposed Assessment of Trust Fund Recovery Penalties ("TFRP") in the following amounts:

| Tax Period Ended | Date Return Filed | 26 U.S.C. § 6672 Amount Assessed |
|---|---|---|
| 09/30/2000 | 12/04/2000 | $1,832,501.00 |
| 09/30/2001 | 01/18/2002 | $3,497,448.32 |
| 12/31/2001 | 02/28/2002 | $4,803,626.85 |

14. On May 9, 2003, the Plaintiff timely appealed the proposed assessments to the Defendant's IRS Appeals Office.

15. On March 23, 2006, Defendant's IRS Appeals Office notified Plaintiff that it had rejected his administrative appeal and that TFRP assessments would be made against him for the excise tax periods ended September 30, 2000, September 30, 2001 and December 31, 2001.

16. Upon information and belief, Plaintiff believes the excise tax obligations for the period ended September 30, 2000 have now been fully paid by the Company. This tax period was not covered by the Stabilization Act.

17. The excise taxes incurred during the periods ended 9/30/2001 and 12/31/2001 remain unpaid and are directly related to the provisions of the Stabilization Act.

18. In effect, the IRS is now imposing personal liability upon the Plaintiff because the Company put its trust in Congress while endeavoring to remain economically viable following the terrorists attacks of September 11, 2001.

19. Further, in violation of Federal law (26 U.S.C. § 6303), the IRS failed to provide Plaintiff with proper notice of its TFRP assessments before June 3, 2006, more than sixty (60) days following the date the assessments were allegedly recorded on March 28, 2006.

20. The IRS also failed to comply with Plaintiff's repeated requests under 26 U.S.C. § 6203 for a copy of all relevant IRS records of assessment related to the trust fund recovery penalties at issue.

21. On June 30, 2006, Plaintiff initiated a Collection Due Process ("CDP") proceeding under 26 U.S.C. § 6320 to protest the Defendant's filing of a Notice of Federal Tax Lien, its failure to provide proper notice of its assessments, and its failure to provide all relevant TFRP assessment records. The CDP proceeding remains pending in the Defendant's IRS Appeals Office. The United States Tax Court has exclusive jurisdiction to adjudicate any unresolved CDP issues. See, 26 U.S.C. § 6330(d)(1).

22. Hoping to delay filing this action pending final resolution of his CDP proceeding, Plaintiff sought the Defendant's agreement to extend the two-year deadline to file this suit under 26 U.S.C. § 6532(a)(2). The Defendant refused.

## COUNT I
(Period Ended 09/30/2000)

23. The Plaintiff reasserts the allegations contained in paragraphs 4 through 22, supra.

24. On or around November 30, 2000, the Company submitted its Quarterly Federal Excise Tax Return (720) for the period ending September 30, 2000 with a check for full payment to the IRS. The Company's account contained sufficient funds to cover the payment.

25. The Form 720 and check were received by the IRS on or around December 4, 2000.

26. Following the advice of bankruptcy counsel after filing a Chapter 11 Petition on December 6, 2006, the Company closed all its bank accounts, reopening new accounts as a bankrupt debtor.

27. The account upon which the excise payment for the period ending September 30, 2000 was drawn was closed before the IRS presented the check to the Company's bank.

28. On or around June 2, 2006, Plaintiff paid to Defendant, and Defendant illegally and erroneously collected from the Plaintiff, the sum of $11.36, a divisible portion of the trust fund recovery penalty ("TFRP") of $1,832,501 assessed against him related to the Company's unpaid federal transportation excise taxes for the period ended September 30, 2000.

29. The TFRP assessment against Plaintiff is based upon an erroneous determination by Defendant (IRS) that he is liable under 26 U.S.C. § 6672 for federal transportation excise taxes unpaid by his employer, National Airlines, Inc.

30. On or around June 2, 2006, Plaintiff timely filed with the IRS a claim for refund (Form 843) of the divisible portion of excise taxes that the IRS applied against the illegal TFRP assessed against him for the period ended September 30, 2000. A copy of the Form 843 is attached as Exhibit A to the Complaint (Doc. 1), filed 06/04/08.

31. On or after June 6, 2006, the IRS mailed a formal notice of disallowance to Plaintiff. A copy of the notice of disallowance is attached as Exhibit B to the Complaint (Doc. 1), filed 06/04/08.

32. Plaintiff's claim of refund for the tax period ended September 30, 2000 was erroneously or illegally disallowed by Defendant. Upon information and belief, Plaintiff asserts that Defendant failed to timely and/or properly assess the TFRP assessment

against him for the period ended September 30, 2000. Alternatively, upon information and belief, Plaintiff asserts that the TFRP assessment against him for the period ended September 30, 2000 has been, or is capable of, full satisfaction, since the Company had sufficient tax credits, overpayments, and/or refunds that when properly applied to this tax period eliminates the TFRP assessment against him.

33. Alternatively, Plaintiff's claim of refund for the tax period ended September 30, 2000 was erroneously or illegally disallowed by Defendant since Plaintiff did not act willfully by failing to pay over this period's trust fund taxes and therefore cannot be held liable for the Company's unpaid excise tax liabilities.

## COUNT II

(Periods Ended 09/30/2001 and 12/31/2001)

34. The Plaintiff reasserts the allegations contained in paragraphs 4 through 22, supra.

35. On or around June 2, 2006, Plaintiff paid to Defendant, and Defendant illegally and erroneously collected from the Plaintiff, the sums of $14.89 and $14.99, divisible portions of the trust fund recovery penalties ("TFRP") of $3,497,448 and $4,803,627 assessed against him related to the Company's unpaid federal transportation excise taxes for the periods ended September 30, 2001 and December 31, 2001, respectively.

36. The TFRP assessments against Plaintiff are based upon an erroneous determination by Defendant (IRS) that he is liable under 26 U.S.C. § 6672 for federal transportation excise taxes unpaid by his employer, National Airlines, Inc.

37. On or around June 2, 2006, Plaintiff timely filed with the IRS claims for refund (Forms 843) of the divisible portions of excise taxes that the IRS applied against the illegal TFRP assessed against him for the periods ended September 30, 2001 and December 31, 2001, respectively. Copies of the Forms 843 are attached as Exhibits C and D, respectively, to the Complaint (Doc. 1), filed 06/04/08.

38. On or after June 6, 2006, the IRS mailed a formal notice of disallowance to Plaintiff for the periods September 30, 2001 and December 31, 2001. A copy of the notice of disallowance is attached as Exhibit B to the Complaint (Doc. 1), filed 06/04/08.

39. Plaintiff's claims for refund for the tax periods ended September 30, 2001 and December 31, 2001 were erroneously or illegally disallowed by Defendant. Plaintiff's Complaint is based upon the following alternative grounds:

    A. No excise taxes remained in trust by reason of government action authorizing the use of the funds by the Company following the terrorist attacks of September 11, 2001. Common law trust rules apply. When a beneficiary (i.e., the Defendant) authorizes the trustee (i.e., the Plaintiff) to transfer or utilize trust funds, the trust terminates even though the purposes of the trust have not been accomplished. The Plaintiff is under no liability for making such transfer.

B. Plaintiff did not act willfully by failing to pay over these periods' trust fund taxes and therefore cannot be held liable for the Company's unpaid excise tax liabilities. The Plaintiff relied upon the advice of counsel and the clear terms of the Stabilization Act allowing use of the excise taxes by the Company for operating expenses.

C. The Plaintiff is not liable for the trust fund recovery penalties because the taxes accrued while the Company was under the bankruptcy court's jurisdiction.

D. The IRS cannot assert a trust fund recovery penalty for taxes that would not be subject to IRS lien priority status. The excise taxes due after September 10, 2001 and before January 15, 2002 are not trust funds in that the IRS could not have impressed a lien on such amounts even if it was directly informed that the amounts were being used to pay other creditors.

E. The Defendant effectively established a contract with Plaintiff and other officers of the Company, allowing them to use government funds held in trust to protect the airline industry and the Nation's transportation system. The Government cannot lawfully induce private parties to take actions that advance the Government's own objectives by promising favorable treatment and thereafter punish the solicited actions by withdrawing the promised treatment.

F. The Defendant should be estopped from seeking to assert TFRP assessments against Plaintiff. Following the terrorist attacks, Defendant loaned

money and made loan guarantees to at least one other competing airline in exchange for equity/ownership interests. The actions of the competitor and Defendant effectively prevented the Company from repaying its tax obligations. Further, it is a direct conflict of interest for the Government to participate in and facilitate the Company's failure and now seek recovery from the Plaintiff.

G. Upon information and belief, Plaintiff asserts that Defendant failed to timely and/or properly assess the TFRP assessment against him.

DEMAND FOR JURY

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff requests a jury trial in this case.

WHEREFORE, Plaintiff demands judgment and other relief against Defendant as follows:

1. Judgment for the sum of $41.24;

2. Judgment for interest on the aforesaid sum as allowed by law;

3. Abatement of all unpaid trust fund recovery penalties assessed against him for the above-referenced periods;

....

....

....

4. Judgment for his attorneys' fees and other costs herein expended; and

5. All other relief to which Plaintiff may be entitled.

DATED this 17th day of July, 2008.

**WOOLSTON & TARTER, P.C.**

By: /s/Tim A. Tarter
TIM A. TARTER, Esq.
*Pro Hac Vice* Lead Counsel for Plaintiff
Arizona Bar No. 018656
Suite 1430
2400 East Arizona Biltmore Circle
Phoenix, Arizona 85016-2114
Telephone (602) 532-9197
Facsimile (602) 532-9193
tim@woolston-tarter.com