**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MICHAEL J. CONWAY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 4:08-CV-00201 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S MOTION**
**FOR SUMMARY JUDGMENT AND BRIEF**

**I.  INTRODUCTION AND OVERVIEW.**

This is a tax refund suit brought by plaintiff, Michael Conway, contesting whether he was a responsible person pursuant to 26 U.S.C. § 6672 for unpaid excise taxes of National Airlines, Inc. ("National"), a company which he founded.  National was an airline based in Las Vegas that sought "to leverage the historically strong demand for airline seats to and from Las Vegas." (Discl. Stmt. P. 15).  National began flying in 1999 and was in bankruptcy by December 2000.

The United States filed a counterclaim for $8,449,358.93, which is the unpaid balance of the assessments against plaintiff[1].  As will be shown below, the undisputed facts establish that Conway was, among other roles, the chief executive officer and ultimate decision maker of National for the three quarters at issue.  Conway also allowed **hundreds** of millions of dollars of payments to creditors other than the United States, including himself, after he knew there were unpaid excise taxes.  The undisputed facts come largely from plaintiff's own deposition testimony and were corroborated by several other high-ranking executives of National.  These

---

[1] This amount does not include the interest that has accrued, and will continue to accrue, as a matter of law since the dates of the assessments against Conway.  26 U.S.C. §§ 6601 & 6621.

1

facts, together with Fifth Circuit precedent, establish beyond peradventure that summary judgment must be granted in favor of the United States holding Conway to be a responsible person who acted willfully for each quarter at issue, the third quarter of 2000 and the third and fourth quarters of 2001.

As will be seen, it is hard to imagine a person more responsible person than Conway.  It is also clear that his "argument" that taxes **deferred** by Congress as a result of the terrorist attacks of September 11, 2001, need never be paid, must fail.

## II. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT.

1.      Whether plaintiff was a person responsible for collecting, accounting for, or paying over excise taxes collected from passengers when they bought tickets to fly from National?

2.      Whether plaintiff willfully failed to collect, account for, or pay over the collected excise taxes as provided by 26 U.S.C. § 6672?

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS.

A.  NATIONAL'S UNPAID TRANSPORTATION EXCISE TAXES.

National had unpaid transportation excise taxes, which are reported on IRS Form 720, when it ceased business in the following amounts[2]:

Quarter ended September 30, 2000     $148,325.00[3]

Quarter ended September 30, 2001    $3,497,448.32

---

[2] Copies of the Form 720s filed by National for these quarters are attached to the Fisher Affidavit as Exhibits 1 - 3.

[3] The amount shown as due on the Form 720 for the quarter ended 9/30/2000 was $1,832,501.01. Subsequent payments applied to this quarter, for which Conway has gotten credit, have reduced the amount still in issue to $148,325.00.

Quarter ended December 31, 2001    $4,803,626.85
**TOTAL**                          **$8,449,400.17**

The amounts listed as due for the last two quarters are taken directly from the Form 720s filed by National.  (Exhibits 2 & 3).

B.  CONWAY'S DOMINANT ROLE IN NATIONAL.

Conway was the founder of National.  (Con. Dep. p. 20, lines 2 - 10)[4].  He was also the chief executive officer, president and chairman of the board of directors of National during all the periods in question. (Con. Dep. p. 65, lines 10 & 11); (Nakashima Dep. p. 23, lines 6 - 20)[5]; (Tourek Dep. p. 20, lines 16 -25)[6].  As stated in National's disclosure statement from its bankruptcy, "National was founded in April 1995 by Michael Conway, its current Chairman of the Board, President and Chief Executive Officer."  (Discl. Stmt. p. 15[7]).  He knew when he started National that airlines had to collect excise taxes and pay them over to the United States.  (Con. Dep. p. 65, lines 10 & 11).  Conway personally hired high level employees, such as the second most powerful employee, Raymond Nakano (Nakano Dep. 14, 3-10[8]), and the senior vice-president of legal and human resources, Kevin Tourek.  (Tourek Dep. p. 17, lines 8 - 11).  Conway also had the authority to fire employees.  (Nakano Dep. p. 86, line 22 - p. 87, line 1).

------

[4]  A copy of the relevant pages of Mr. Conway's ("Con.") deposition are attached as Exhibit 4 to the Fisher Affidavit.

[5]  A copy of the relevant pages of Clyde Nakashima's deposition are attached as Exhibit 5 to the Fisher Affidavit.

[6]  A copy of the relevant pages of Kevin Tourek's deposition are attached as Exhibit 6 to the Fisher Affidavit.

[7]  The relevant pages of National's Disclosure Statement are attached as Exhibit 7 to the Fisher Affidavit.

[8]  A copy of the relevant pages of Raymond Nakano's deposition are attached as Exhibit 8 to the Fisher Affidavit.

3

The senior executives at National reported directly to Conway.  (Nakano Dep. p. 14, lines 3 - 10).  Conway reported to no one, except the board of directors that he chaired.

Conway was the person who lined up the initial investors for National.  (Con. Dep. p. 52, line 14 - p. 53, line 9).  He was the ultimate decision maker.  (Tourek Dep. p. 26, lines 12 - 15). His salary was more than double that of any other employee of National.[9]  "Certainly, while the company was in operation, I was the highest-paid employee."  (Con. Dep. p. 71, lines 4 - 6). Schedule E of the 2000 Form 1120 shows that Conway received a salary of $546,639.00.  The next highest salary is that of Mr. Nakano, who made $204,651.00.  *Id.*  In the years **after** National's bankruptcy filing, Mr. Conway received the following wages:

    2001        $529,424.00
    2002        $386,492.00
    2003         $154,748.00
    **TOTAL $1,070,664.00** (Con. Dep. p. 85, line 25 - p. 89, line 4).

Conway knew of the unpaid excise taxes for the third quarter of 2000, at the latest, on December 6, 2000, when National declared bankruptcy[10].  National's bankruptcy schedules reflected the liability for the unpaid excise taxes[11].  He knew of the unpaid taxes for the third and fourth quarters of 2001, at the latest, on September 22, 2001, when Congress passed the law giving airlines a deferral of time within which to pay their excise taxes.  Attached to the Fisher Affidavit as Exhibit 12 is a letter Conway wrote to the IRS on January 15, 2002, requesting an

---

[9] A copy of the relevant pages of National's Form 1120 for 2000 are attached as Exhibit 9 to the Fisher Affidavit.

[10] A copy Conway's Form 4180 Report of Interview with Individual Relative to Trust Fund Recovery Penalty or Personal Liability for Excise Tax, is attached to the Fisher Affidavit as Exhibit 10.  Conway states on p. 5, question 1 that he learned of the unpaid excise taxes "SUBSEQUENT TO BANKRUPTCY FILING ON 12/6/00."

[11] A copy of the relevant pages of National's Schedules and Statements filed in its bankruptcy are attached as Exhibit 11 to the Fisher Affidavit.

extension of time "to pay National's air transportation excise tax liability for the quarters ended September 30 and December 31, 2001." Attached to the Fisher Affidavit as Exhibits 13 and 14 are certified IRS Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, for National for the last two quarters of 2001 showing that National did not make **any** excise tax payments after August 27, 2001.

In addition to the continued payment of Conway's salary, over $400,000,000.00 was deposited in National bank accounts after Conway knew of the unpaid excise taxes. Over $400,000,000.00 was also paid to creditors other than the IRS after Conway knew of the unpaid excise taxes[12].

Conway was one of the largest individual stockholders of National. (Nakashima Dep. p. 97, lines 11 - 14). He was an authorized check signer on every company checking account[13]. He ran the day-to-day operations of National. After he knew of the unpaid excise taxes, Conway continued to receive his large salary. (Con. Dep. p. 69, lines 13 - 18). He also personally paid, authorized and/or acquiesced in the payment of millions of dollars to creditors other than the IRS. (Con. Dep. p. 135, line 17 - p. 136, line 2). He never ordered his employees to pay the taxes before anything else. (Con. Dep. p. 48, lines 3 - 7). Conway had access to the excise tax returns and every other document at National. In fact, Conway signed the Form 720 for National for the quarter ended June 30, 2002. (Con. Dep. p. 135, line 17 - p. 136, ln. 2)[14]. He also signed

---

[12] Attached as Exhibit 15 to the Fisher Affidavit are the front pages from National's account at Bank of America for the period from May 1, 2001 - November 30, 2002. This one bank account shows that National had both deposits and expenditures for this time period in excess of $400,000,000.00.

[13] Attached as Exhibit 16 to the Fisher Affidavit are the bank signatures cards for National.

[14] A copy of the Form 720 for this quarter is attached as Exhibit 17 to the Fisher Affidavit.

a Form 1127 (Con. Dep. p. 137, line 21 - p. 138, line 7) requesting more time to pay the excise taxes that were due for the second quarter of 2002[15].

Conway had the authority to decide which creditors to pay and determine overall corporate financial policy.  (Nakano Dep. p. 87, lines 5 - 7 and p. 88, lines 23 - 25).  If the company did not have enough money to pay all its bills, Conway had the authority to determine which ones did get paid.  (Nakano Dep. p. 89, lines 1 - 5).  Conway admitted that the excise taxes National collected were **not** segregated into separate bank accounts.  (Con. Dep. p. 36, line 17 - p. 37, line 2).  The fact that the funds were not segregated was confirmed by other witnesses.  (Nakano Dep. p. 66, lines 13 - 19); (Frost Dep. p. 35, line 21 - p. 36, line 6)[16].

Conway was the individual with the most authority at National.  (Con. Dep. p. 74, lines 11 - 15); (Lum Dep. p. 14, line 24 - p. 15, line 5[17]); (Nakashima Dep. p. 24, lines 9 - 13); (Frost Dep. p. 18, lines 3 - 15 & p. 24, lines 2 - 9).  Mr. Nakano testified that "everyone" knew the Conway was the "number one guy in charge".  (Nakano Dep. p. 56, lines 3 - 8).

C.  CONWAY'S ROLE IN NATIONAL NOT CHANGED BY ITS BANKRUPTCY.

National was not a successful company, and on December 6, 2000, it filed a voluntary Chapter 11 bankruptcy[18] in Nevada, where the company was headquartered.  The possibility of filing bankruptcy had been discussed "at least a month or two" before it was actually filed.

---

[15] A copy of the Form 1127 and its accompanying cover letter are attached as Exhibit 18 to the Fisher Affidavit.

[16] A copy of the relevant pages of Donald Frost's deposition are attached as Exhibit 19 to the Fisher Affidavit.

[17]  A copy of the relevant pages of Kevin Lum's deposition are attached as Exhibit 20 to the Fisher Affidavit.

[18] America West Airlines, another airline Conway helped to found, had previously filed bankruptcy when Conway was in charge of that company.  (Con. Dep. p. 18, lines 17 - 21).

(Con. Dep. p. 55, lines 6 - 13). National's bankruptcy did not change plaintiff's role in the company. (Con Dep. p. 28, lines 8 - 16). He remained the CEO, president and board chairman until he left the company in late 2002, which was well after the periods at issue in this case. (Nakano Dep. p. 16, lines 14 - 25); (Frost Dep. p. 39, lines 13 - 22).

National never made a profit for an entire year. (Con. Dep. p. 51, line 25 - p. 52, line 3). During its first seven months of actual flying, National had a net loss of $33,100,000. (Discl. Stmt. p. 44). For the 2000 fiscal year, National had a net loss of $35,100,000. (Discl. Stmt. p. 45). For the partial year ended September 30, 2001, National had a net loss of approximately $26,800,000. (Discl. Stmt. p. 76).

In National's bankruptcy, the IRS filed an administrative claim for payment that totaled $11,225,347.23, the vast majority of which was the unpaid excise taxes for the last two quarters of 2001[19]. Conway admitted that National never objected to that claim "[N]or did we ever dispute that we owed the money." (Con. Dep. p. 56, line 21 - p. 57, line 10; p. 58, lines 1 - 7). The Chapter 7 trustee agreed that the IRS administrative claim should be allowed in its entirety, and an Order was entered in National's bankruptcy establishing this fact[20].

In addition, the IRS filed a priority proof of claim in National's bankruptcy for the unpaid pre-petition excise taxes for the third quarter of 2000. This proof of claim reflected an unpaid balance for the third quarter of 2000 of $1,832,501.01[21]. This is the exact amount that National

---

[19] A copy of this administrative claim is attached as Exhibit 21 to the Fisher Affidavit.

[20] A copy of the Stipulation and Order allowing the IRS's administrative claim is attached as Exhibit 22 to the Fisher Affidavit.

[21] A copy of this proof of claim is attached as Exhibit 23 to the Fisher Affidavit.

7

admitted was owed on its bankruptcy schedules.  There was never any Objection to the IRS's proof of claim in National's bankruptcy.

On p. 3, footnote 3, of the attachment to the Form 1127, Application for Extension of Time for Payment of Tax (Ex. 18), Conway noted that National was given a $20.1 million subsidy "from the United States government under the Act"[22].  This $20,100,000.00 need not be paid back.

## D.  THE ASSESSMENTS AGAINST CONWAY.

As Conway states in paragraphs 13 - 15 of his Complaint, "On or around March 14, 2003, the IRS notified Petitioner of the Proposed Assessment of Trust Fund Recovery Penalties..[23]  On May 9, 2003, the Petitioner timely appealed the proposed assessments ...  On March 23, 2006, Respondent's IRS Appeals Office notified Petitioner that it had rejected his administrative appeal and that the TFRP assessments would be made against him".  Attached to the Complaint is plaintiff's Form 843 Claim for Refund and Request for Abatement.  On p. 1 of Schedule A attached to that Form 843, plaintiff's counsel admits that he had received the IRS Form 2751, Proposed Assessment of the Trust Fund Recovery Penalty.

The IRS Appeals Officer assigned to work Conway's protest was Stephen Sein.  In his Affidavit, Mr. Sein states that he notified Conway and his then attorney of his final administrative determination to uphold the assessments on March 13, 2006[24].

---

[22] The "Act" Conway referred to is the Air Transportation Safety and System Stabilization Act, which will be discussed below.

[23] A copy of the letter sent to Conway, IRS Form 1153, is attached to the Fisher Affidavit as Exhibit 24.

[24] Mr. Sein's Affidavit is attached as Exhibit 25.

8

Conway was subsequently assessed for each quarter at issue on March 28, 2006[25], within the thirty days allowed under 26 U.S.C. § 6672(b)(3)(B). The amount of the assessments for the last two quarters of 2001 are based entirely on the Excise Tax Returns filed by National. The assessments equal what National admitted was not paid. An Affidavit of Sandy Mikkelsen, an IRS employee at the Ogden Service Center where the assessments were made, is attached as Exhibit 29. Ms. Mikkelsen is the Lead Officer of the Revenue Accounting Team in the Ogden Service Center. Part of her job responsibilities include being familiar with the procedures employed at the Service Center for the making and recording of assessments.

E. THE LAW PASSED AFTER 9/11.

While National was already in bankruptcy, the terrorist attacks of September 11, 2001 occurred. These attacks had a dramatic effect on this nation's airlines. The government, moving with impressive alacrity, passed the Air Transportation Safety and System Stabilization Act, which allowed airlines to **DEFER** payment of the excise taxes that are collected from ticket buyers. 49 U.S.C. § 40101.

It was commonly understood at National that this law merely deferred the due date for making the excise tax payments, and that the excise taxes for the last two quarters of 2001 did need to be paid. (Lum Dep. p. 36, lines 1 - 8); (Frost Dep. p. 10, lines 15 - 18).

However, in this case, Conway claims that the law passed by Congress to assist airlines in the short-term means the amounts need never be paid. Plaintiff admitted at his deposition that

---

[25] Copies of the certified IRS Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, are attached to the Fisher Affidavit as Exhibits 26 - 28.

no employee of the United States ever told him that the excise taxes need never be paid.

(Conway Dep. p. 34, line 25 - p. 35, line 3).

## III. STANDARD FOR GRANTING SUMMARY JUDGMENT.

### A.  GENERAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 815 (5th Cir. 1993).  A genuine issue of material fact exists only where there is sufficient evidence favoring the nonmoving party for the trier of fact to find for that party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  A fact is "material" if it "might affect" the outcome of the suit under governing law.  *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).

In a motion for summary judgment, the moving party's initial burden is slight.  Fed. R. Civ. P. 56 does not require the moving party to negate the opponent's claim. *Celotex Corporation. v. Catrett*, 477 U.S. 317, 323 (1986).   Once the movant has made an initial showing, the burden shifts to the nonmovant.  *Wilson Indus., Inc. v. Aviva America Inc.*, 185 F.3d 492, 494 (5th Cir. 1999).  The nonmovant must then establish that there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322-23.  The nonmovant must go beyond the pleadings and designate specific facts showing that there are genuine issues for trial on every element challenged by the motion. *Id.* at 324. Conclusory allegations will not establish an issue of fact sufficient to defeat summary judgment.  *Wilson Indus*., *supra* at 494.

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for

trial." *Anderson*, 477 at 256. The non-moving party does not meet this burden by showing "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Anderson*, 477 U.S. at 252. Accordingly, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Id.* at 256.

Motions for summary judgment are designed to "pierce the allegations in the pleadings," thereby permitting the court to determine whether a factual basis actually exists for a plaintiff's claims. *Save Our Cemeteries v. Archdiocese of New Orleans*, 568 F.2d 1074, 1077 (5th Cir. 1978); *see generally*: 10 C. Wright & A. Miller, Federal Practice and Procedure, § 2712, p. 569 (1983). The Supreme Court has encouraged trial courts to use summary judgment to dispose of baseless claims promptly.

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, **speedy** and **inexpensive** determination of every action." (citations omitted) * * * Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, **but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.**

*Celotex*, 477 U.S. at 327. (Emphasis added).

B. SUMMARY JUDGMENT IN SECTION 6672 CASES.

Motions for Summary Judgment are frequently granted in Section 6672 cases, such as the present one. This has been true from the time of *Mazo v. United States*, 591 F.2d 1151 (5th Cir.

11

1979), to earlier this year.  *Rineer v. United States*, 594 F.Supp.2d (N.D. Tex. 2009).  And it

includes cases in the Eastern District of Texas.  *Verret v. United States*, 542 F.Supp.2d 526 (E.D.

Tex. 2008)[26], *aff'd by unpublished opinion*, 312 Fed. Appx. (5th Cir. February 26, 2009); and

*Sutton v. United States*, 194 F.Supp.2d 559 (E.D. Tex. 2001).  *See also Frey v. United States*,

2001 WL 493136 (N.D. Tex. 2001), *aff'd*, 34 Fed. Appx. 151 (5th Cir.), *cert. denied*, 537 U.S.

888 (2002); *Morgan v. United States*, 937 F.2d 281 (5th Cir. 1991); *Howard v. United States*,

711 F.2d 729 (5th Cir. 1983); and *Lencyk v. Internal Revenue Service*, 384 F.Supp.2d 1028

(W.D. Tex. 2005).  This obviously reflects the fact that the District Courts throughout the Fifth

Circuit take seriously the language used by the Fifth Circuit when it held that:

> ...we cannot ignore the extensive case law that narrowly constrains a factfinder's
> province in § 6672 cases.

*Barnett v. Internal Revenue Service*, 988 F.2d 1449 (5th Cir. 1993).

All of the above cases involve individuals assessed pursuant to Section 6672 for unpaid

employment taxes.  However, the law is identical for individuals assessed pursuant to Section

6672 for unpaid excise taxes.  *Ferguson v. United States*, 484 F.3d 1068 (8th Cir. 2007).  *See*

*also*, *Jones v. United States*, 60 F.3d 584 (9th Cir. 1995) (individual, who ran an airline in Las

Vegas, liable for periods prior to appointment of bankruptcy trustee)[27]; and *Cross v. United*

*States*, 311 F.2d 90 (4th Cir. 1962).

---

[26] This district's *Verret* opinion granting summary judgment if favor of the United States provides an exhaustive analysis of both when summary judgment is proper and the state of Section 6672 jurisprudence.

[27] In the instant case, each quarter at issue was before the appointment of the Chapter 7 trustee.  There never was a Chapter 11 trustee.

## IV. STATUTES INVOLVED.

The statutes pertinent to this matter are 26 U.S.C. Sections 4261, 6658, 6671, 6672, 7491 and 49 U.S.C. Section 40101.

## V. ARGUMENT AND AUTHORITIES.

A.     PLAINTIFF WAS A RESPONSIBLE PERSON UNDER § 6672 FOR PAYMENT OF TRUST FUND TAXES FOR NATIONAL FOR EACH QUARTER ASSESSED, WHO WILLFULLY FAILED TO COLLECT, ACCOUNT FOR OR PAY OVER THOSE TAXES.

1.  INTRODUCTION TO THE 100% PENALTY.

26 U.S.C. § 4261 requires airlines to collect excise taxes every time they sell a plane ticket. The money collected from ticket buyers is then held by the employer in trust ("trust fund monies") for the benefit of the United States as provided for by 26 U.S.C. § 7501(a). *Slodov v. United States*, 436 U.S. 238, 242-43 (1978); *Barnett*, 988 F.2d at 1453; *Turnbull v. United States*, 929 F.2d 173 (5th Cir. 1991); *Howard*, 711 F.2d at 733. Airlines are then required to pay over the collected excise taxes to the United States. *Cf. Wood v. United States*, 808 F.2d 411, 414 (5th Cir. 1987).

The undisputed material facts set forth above, render Conway liable as a matter of law and the inquiry should end here. However, as discussed below, Conway makes an argument apparently never before made, that a law **delaying** payment of certain excise taxes, was really a gift to people like him. If that gift comes at the expense of the public fisc, so be it. Conway has not cited any authority that agrees with his interpretation of the law. He thus seeks to escape approximately $8,500,000 in assessments, plus millions of dollars in interest against him personally.

13

If the excise taxes are not paid by the airline, this revenue would be forever lost to the Government unless the Government can collect these taxes from the persons responsible for the collection and nonpayment of the taxes. *Slodov*, 436 U.S. at 243-45; *USLIFE Title Ins. Co. of Dallas v. Harbison*, 784 F.2d 1238, 1242-43 (5th Cir. 1986). To protect against such revenue losses, § 6672(a) was enacted by Congress. *USLIFE Title*, 784 F.2d at 1243. 26 U.S.C. § 6672 reads, in pertinent part:

> (a) GENERAL RULE.--Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over...

26 U.S.C. § 6671(b) defines a person as follows:

> The term "person," as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

The Supreme Court in *Slodov*, when interpreting § 6672, held that:

> We conclude therefore that the phrase "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" was meant to limit § 6672 to persons responsible for collection of third-party taxes and **not to limit it to those persons in a position to perform all three of the enumerated duties with respect to the tax dollars in question**. Emphasis added.

*Slodov*, 436 U.S. at 250. "An individual need not engage in all three of the activities listed in the statute in order to be held liable; involvement in any one of the three named activities is sufficient. *Slodov*, 436 U.S. at 250." *Verret*, 542 F.Supp.2d at 533. Plaintiff is clearly the type of "person" referred to in both the statutes and *Slodov*.

There are two elements to liability under § 6672. The first is that a person upon whom liability is to be imposed must be a person required to collect, truthfully account for, or pay over **any** tax, commonly referred to as a "responsible person".  The second requirement under § 6672 is that such responsible person willfully failed to collect, truthfully account for or pay over such taxes.  *Barnett*, 988 F.2d at 1453; *Turnbull*, 929 F.2d at 178; *Wood*, 808 F.2d at 414.

2.  PLAINTIFF WAS A RESPONSIBLE PERSON WITH RESPECT TO NATIONAL UNDER § 6672 FOR EACH OF THE QUARTERS AT ISSUE.

It is hard to imagine how someone could be a more responsible person than plaintiff.  It is undisputed that he was the chief individual responsible for the overall business of National.  At all relevant times, he was the chief executive officer, president and chairman of National's board of directors.  He was far and away the highest paid employee of National and one of the largest individual stockholders. He was the ultimate financial decision maker for National.  He was an authorized check signer and could hire and fire employees.  In fact, the second most powerful person at National, Raymond Nakano, was hired by Conway and reported to him.  There was literally nothing Conway could not do for National.

It was Conway who testified on behalf of National's reorganization plan in bankruptcy court, and who gave sworn declarations in support of the plan.  Conway was the only National employee that signed the Disclosure Statement filed with the bankruptcy court.  (Discl. Stmt. p. 84).  It was Conway who tried to negotiate additional sources of capital for National.  It was Conway who issued the press release to the public, and the notice to National's employees, when he decided to close the business.  Summary judgment against him is mandated based on Fifth Circuit precedent.

15

"This Circuit takes a broad view of who is a responsible person under § 6672." *Logal v. United States*, 195 F.3d 229, 232 (5th Cir. 1999); *Barnett*, 988 F.2d at 1454; *Gustin v. United States*, 876 F.2d 485, 491 (5th Cir. 1989). The crucial inquiry is whether the individual had the effective power to pay the taxes. *Barnett*, 988 F.2d at 1454; *Turnbull*, 929 F.2d at 178; *Howard*, 711 F.2d at 734. "Within this Circuit, **cases not finding § 6672 responsibility are relatively few and far between**." *Barnett*, 988 F.2d at 1456.

Responsibility for purposes of § 6672 is a matter of status, duty, power and authority, whether exercised or not. *Wood*, 808 F.2d 415; *Howard*, 711 F.2d at 734. It is not necessary that an individual have the final, or sole, word as to which creditors should be paid in order to be subject to liability under § 6672. *Verrett*, 542 F.Supp.2d at 534. In fact, "responsibility does not require knowledge that one has that duty and authority." *Barnett*, 988 F.2d at 1454. Rather, it is sufficient that the person have **some** power, authority, and control over the process by which corporate funds are disbursed to find that he is a "responsible person" under § 6672. *Neckles v. United States*, 579 F.2d 938 (5th Cir. 1978).

Responsible person status is not limited to people who perform the mechanical jobs of collection and payment of corporate funds. The Fifth Circuit, like other circuits, looks at a number of circumstantial indicia of responsible person status when a party lacks the precise responsibility of withholding or paying the taxes. *Barnett*, 988 F.2d at 1455. In *Barnett*, the Court noted that:

> ... we cannot ignore the extensive case law that narrowly constrains a factfinder's province in § 6672 cases. Footnote omitted. Thus, although "the facts ... are critical in ... any § 6672 cases," *Commonwealth National Bank of Dallas v. United States*, 665 F.2d at 752, we tend to agree with the other circuits that have held that certain facts will almost invariably prove dispositive of responsibility.

16

*Barnett*, 988 F.2d at 1454. Recognized indicia of responsible person status include the following:

> We ask whether such a person: (i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks. (Citations omitted.)  No single factor is dispositive.

*Id.* at 1455.  Conway had **every single one** of these indicia of responsibility.

Conway is clearly a responsible person under Section 6672 as a matter of law.

B.    CONWAY WILLFULLY FAILED TO COLLECT, ACCOUNT FOR OR PAY OVER THE TRUST FUND TAXES OF NATIONAL.

Liability attaches to a "responsible person" under § 6672 only upon his "willful" failure to collect or account for or pay over the excise taxes.  As stated above, at the absolute latest, Conway knew by December 6, 2000, that excise taxes were not being timely paid.  December 6, 2000, was the day that National filed bankruptcy.  On its bankruptcy schedules, National lists the IRS as a priority claimant for unpaid excise taxes for the third quarter of 2000 in the amount of $1,832,501.01.  Yet Conway admitted in his interview with the IRS on January 30, 2003 (Form 4180, attached as Ex. 10), that after he knew of the unpaid excise taxes creditors other than the IRS were paid for "NORMAL COURSE OF BUSINESS EXPENSES IN CONNECTION WITH CHAPTER 11 REORGANIZATION." (Capital letters in original).  He also admitted that he was one of the individuals authorizing the payment of these creditors in lieu of the IRS.  (Form 4180, p. 6, questions 13 & 14).  This conduct renders him willful as a matter of law.  As stated by the Fifth Circuit in *Mazo*, 591 F.2d at 1157:

> Once they were aware of the liability to the government, they were under a duty to ensure that the taxes were paid before any payments were made to other creditors. If, after receiving actual notice, corporate officials could once again delegate their responsibility to subordinates, then repeated escape from liability

17

would be possible and the government would be required to monitor corporate affairs daily. The statutory concept of willfulness conveys no such meaning.

This law has been noted numerous times since *Mazo*.

A district court in Texas, when granting summary judgment in favor of the United States noted this rule of law:

> Once Ortiz "became aware of the tax liability, he had a duty to ensure that the taxes were paid before any payments were made to other creditors." *Barnett*, 988 F.2d at 1457. The IRS's evidence, that he failed to do so, establishes willfulness **as a matter of law**. *Id.* (citing *Howard*, 711 F.2d at 735).

*Lencyk v. Internal Revenue Service*, 384 F.Supp.2d 1028, 1036 (W.D. Tex. 2005). (Emphasis added.)

> A responsible person acts willfully if he knows the taxes are due but uses corporate funds to pay other creditors, *Barnett*, 988 F.2d at 1457; *Gustin v. U.S.*, 876 F.2d 485, 492 (5th Cir. 1989), or if he recklessly disregards the risk that the taxes may not be remitted to the government. *Gustin*, 876 at 492. A responsible person who learns of the underpayment of taxes **must** use later-acquired unencumbered funds to pay the taxes; failure to do so **constitutes willfulness**. *Barnett*, 988 F.2d at 1458.

*Logal*, 195 F.3d at 232. (Emphasis added).

Any individual who is a responsible person for all quarters who is found to have acted willfully for at least one quarter is, as a matter of law, willful for all quarters for which he is a responsible person.  Thus, if the Court believes that Conway really did not know about the unpaid excise taxes for the third quarter of 2000 until the company filed bankruptcy, he is still willful for that quarter.  This very issue has been ruled on several times by the Fifth Circuit.

In *Mazo v. United States*, 591 F.2d 1151 (5th Cir. 1979),  several corporate officers, who were all found to be responsible persons, did not learn of the unpaid taxes until October 6, 1969. The unpaid taxes were for the first three quarters of 1969, which ended on March 31, 1969, June

18

30 1969, and September 30, 1969.  Therefore, none of the officers knew of the unpaid taxes

while they were accruing.  Each of these officers (other than Mr. Sadler) signed a check to a

creditor other than the IRS after October 6, 1969.  The *Mazo* court held each of the officers,

including Mr. Sadler, to be willful for each of the quarters for which they were responsible

persons, in other words, the first three quarters of 1969.  In doing so the Court stated:

> In the case of individuals who are responsible persons both before and after
> withholding tax liability accrues, as the appellants were in this case, there is a
> duty to use unencumbered funds acquired after the withholding obligation
> becomes payable to satisfy that obligation; failure to do so when there is
> knowledge of the liability, as was the case here, constitutes willfulness.

*Id.* at 1157.

This Court, in *Logal v. United States*, 1998 WL 6811477 (E.D. Tex. 1998), granted the

United States' Motion for Judgment as a Matter of Law after being presented with the above

argument.  The jury in *Logal* had found Mr. Logal to be a responsible person for each quarter at

issue, but willful for only the last quarter.  The Court agreed with the United States that Mr.

Logal's willfulness related back to the earlier quarters as a matter of law.  This Court's opinion

was affirmed at *Logal v. United States*, 195 F.3d 229 (5th Cir. 1999).

All that is required for a finding that Conway acted willfully is to show that he

voluntarily, consciously and intentionally preferred any other creditor over the United States.

No evil motive is required.  As one circuit has noted:

> To some willfulness sounds like a word which contains a suggestion of moral
> evil.  It does not.

*Buffalow v. United States*, 109 F.3d 570, 573 (9th Cir. 1997).

The burden of proof is on Conway to prove that he was not a responsible person and that

he did not act willfully.  26 U.S.C. § 7491(a) provides for a shift of the burden of proof to the

United States in certain circumstances.  However, Section 7491 "is inapplicable to trust fund

penalty cases."  *Mason v. Commissioner*, 132 T.C. No. 14 (May 6, 2009).  As stated in *Mason*,

Section 7491(a)(1) only applies to taxes imposed by subtitle A or B.  "The sec. 6672 trust fund

penalty is imposed by subtit. F of the Internal Revenue Code."  *Id.* * 15, FN 15.  *Mason* was

decided under Fifth Circuit precedent, since any appeal would have been to the Fifth Circuit.  *Id.*

* 16.

Conway is clearly willful under Section 6672 as a matter of law.

C.    THE LAW PASSED BY CONGRESS AFTER 9/11 DOES NOT EXCUSE
      PLAINTIFF'S NON-PAYMENT OF THE EXCISE TAXES.

On September 22, 2001, Congress passed and the President signed into law, the Air

Transportation Safety and System Stabilization Act.  Pub. L. 107-42, 115 Stat. 236 ("the Act").

Section 301 of the Act allowed airlines to **delay** payment of any excise taxes due between

September 10, 2001 - November 15, 2001, to November 15, 2001.  Congress specifically granted

the authority to the IRS to extend this due date until January 15, 2002, at its sole discretion.

Section 301 of the Act states:
(a) Extension of due date for excise tax deposits.--
(1) In general.–In the case of an eligible air carrier, any airline-related deposit
required under section 6302 of the Internal Revenue Code of 1986 to be made
after September 10, 2001, and before November 15, 2001, shall be treated for
purposes of such Code as timely made if such deposit is **made on or before
November 15, 2001**.  If the Secretary of the Treasury so prescribes, the preceding
sentence shall be applied by substituting for 'November 15, 2001' each place it
appears–
        (A) 'January 15, 2002'.

In IRS Notice 2001-77, 2001-2 C.B. 576, 2001 WL 1421850, the IRS extended the due

date until January 15, 2002:

[A]ny deposit of air transportation excise taxes required to be made by an eligible
air carrier after September 10, 2001, and before January 15, 2002 shall be treated

> for purposes of the Code as timely made **if the deposit is made** on or before
> January 15, 2002... Consequently, the time for paying the air transportation
> excise taxes shown or required to be shown on the return also will be **deferred**.
> Under § 6151 of the Code, an eligible air carrier will be **required to pay** such
> taxes for the third quarter of 2001 by January 15, 2002. (Emphasis added.)

There was no confusion as to what the new law meant, *e.g.* it allowed airlines extra time to pay
certain excise tax deposits. Nowhere in the law, or anywhere else, is it even intimated that this
deferral might transmogrify into a permanent forgiving of the need to someday pay these taxes.
Therefore, when National failed to make the deferred payments on January 15, 2002, the Act no
longer provided it with an extension to make further payments. That this is the case is made
obvious by the fact that Conway wrote the IRS on January 15, 2002, requesting an extension of
time to **pay** the taxes. He knew that they had not been forgiven and that the time for deferrals
had passed.

D.    THE ASSESSMENTS AGAINST CONWAY WERE TIMELY AND PROPERLY
      MADE.

The attached Form 4340s are presumptive proof of valid assessments and Conway bears
the burden of producing evidence to the contrary. *United States v. McCallum*, 970 F.2d 66, 71
(5th Cir. 1992). Several other circuit courts have reached the same conclusion. *See e.g.*,
*Conway v. United States*, 326 F.3d 1268 (Fed. Cir. 2003); *Hughes v. United States*, 953 F.2d 531
(9th Cir. 1992); *Fidelity Bank v. United States*, 616 F.2d 1181 (10th Cir. 1980).

The Fifth Circuit in *Perez v. United States*, 312 F.3d 191, 195-6 (5th Cir. 2002), held as
follows concerning Forms 4340:

> We held over a decade ago that, under the Federal Rules of Evidence, IRS Form
> 4340 constitutes valid evidence of a taxpayer's assessed liabilities and the IRS's
> notice thereof. (Footnote omitted)....

21

Against this solid evidence, Perez offered the district court only unsubstantiated, self-serving allegations that he did not receive notice of his assessed federal tax liabilities. And, his legal argument that IRS Forms 4340 and 4549 are not valid evidence of assessment and notice is totally specious.... The district court properly granted summary judgment to the government on the issues of whether Perez's taxes were properly assessed and whether Perez was properly notified of these assessments.

The fact that the Forms 4340 incorrectly list the assessments as jeopardy assessments, when they were actually quick assessments, does not benefit Conway. The IRS's use of "quick assessments", a standard procedure under IRS regulations, was legal. *See e.g., Dallin ex rel. Estate of Young v. United States*, 62 Fed. Cl. 589, 601-12 (2004) (finding that mislabeling of assessments as jeopardy assessment, rather than a quick assessment, did not render it invalid, where it was clear on the face of the documents that an assessment was made, and amount of the tax and identification of the responsible person was correct); *Republic Petroleum Corporation. v. United States*, 613 F.2d 518, 525 (5th Cir. 1980) (affirming district court judgment in part where underlying assessments were "quick assessments".)

"Quick assessments" are assessments made in certain delineated circumstances, including where the period of limitations on assessment will expire within 60 days, such as this case where the IRS only has thirty days to assess Conway after his administrative appeal was denied. 26 U.S.C. § 6672(b)(3)(B). The term is merely administrative shorthand used by the IRS to denote those situations. *See generally*; *Koss v. United States*, 81 A.F.T.R.2d (RIA) 2049 (E.D. Pa. 1998); 1 Audit, Internal Revenue Manual (CCH), § 4.4.25 at 8477. There is no precedent for Conway's suggestion that listing the assessment as a "jeopardy assessment" instead of a "quick assessment" jeopardizes the validity of the assessment. Indeed, the Fifth Circuit has presided over many tax cases where the IRS has made a quick assessment, and it has never suggested that

the use of that method was improper. *See generally United States v. McCallum*, 970 F.2d 66 (5th Cir. 1995); *Cocchiara v. United States*, 779 F.2d 1108 (5th Cir. 1986); *Schupp v. United States*, 71 A.F.T.R.2d (RIA) 917 (E.D. Tex. 1993), *aff'd without opinion*, 58 F.3d 636 (5th Cir. 1995).

Usually, the Forms 4340 are all that courts require to establish a valid assessment. However, faced with the Section 6672 law in this circuit, Conway is trying to attack the making of the assessments and their timeliness. Attached, as Exhibit 29, is the Affidavit of Sandy Mikkelsen. Attached to Ms. Mikkelsen's Affidavit is the Form 23C (RACS 006), which shows the total amount of assessments made in the Ogden Service Center on the day Conway was assessed, March 28, 2006. The document locator number (DLN) on p. 3 of the RAC 006 is the same document locator number listed on the Form 4340s and every other document that shows the date of the assessments.

E.    EVEN IF POST-ASSESSMENT NOTICE AND DEMAND WAS NOT TIMELY MAILED TO CONWAY, THE ASSESSMENTS ARE STILL VALID.

Conway contends that the IRS failed to mail him notice and demand within 60 days of the assessments against him in violation of 26 U.S.C. § 6303(a). Even if he is correct, the Fifth Circuit has clearly held that such failure would only prevent the IRS from proceeding against him administratively. *United States v. McCallum*, 970 F.2d 66, 69 (5th Cir. 1992). The district court in *United States v. McMahan*, 2008 WL 5114651 (S.D. Tex. 2008), recently held:

> However, section 6303(a) is only "designed to protect taxpayers from the summary administrative powers of the IRS. Such protection is unnecessary when the government initiates a civil proceeding because the complaint gives the taxpayer notice that the government is proceeding against his property." *United States v. McCallum*, 970 F.2d 66, 69 (5th Cir. 1992). A failure to send the appropriate notices and demands, even if presumed, does not prevent the Government from bringing a civil action like the one before the Court. *Id.*

*See also, Howell v. United States*, 164 F.3d 523, 526 (10th Cir. 1998); *Purcell v. United States*, 1 F.3d 932, 941-2 (9th Cir. 1993).

23

F.   PLAINTIFF'S ARGUMENTS BEFORE THE IRS ARE INSUFFICIENT AS A MATTER OF LAW TO DEFEAT A MOTION FOR SUMMARY JUDGMENT.

    1.  Plaintiff is wrong that Section 6672 liability cannot be imposed for quarters during which National was in bankruptcy.

Plaintiff argues that taxes unpaid by National during its bankruptcy cannot lead to Section 6672 liability for anyone employed by National.  As support for this argument, he cites *In re Major Dynamics, Inc.*, 897 F.2d 433 (9th Cir. 1990), a case in which the United States was not even a party.  However, the Supreme Court effectively overruled *Major Dynamics* when it decided *Begier v. United States*, 496 U.S. 53 (1990).  In *In re Prescription Home Health Care, Inc.*, 316 F.3d 542 (5th Cir. 2002), the Fifth Circuit held that a bankruptcy court does not have jurisdiction to prevent the IRS from asserting a Section 6672 penalty against a non-debtor, such as Conway here.  In addition, 26 U.S.C. § 6658(b) specifically allows for these assessments to be made against Conway.  The argument of Conway to the contrary has no legal support and must be rejected.

In *In re Matter of Taylor*, 132 F.3d 256 (5th Cir. 1998), the Fifth Circuit reversed both the bankruptcy and district courts, and held that the IRS could proceed under Section 6672 against an individual debtor after his **own** Chapter 11 bankruptcy plan was confirmed.  In *Taylor*, the IRS had filed a proof of claim for income taxes, but not for the Section 6672 penalties.  Nevertheless, the Fifth Circuit held that the IRS could still proceed against Taylor for pre-petition Section 6672 penalties that were not assessed until after Mr. Taylor was out of bankruptcy.  National's bankruptcy has absolutely no impact on the decision of whether Conway is liable pursuant to Section 6672.

G.   CONWAY CANNOT ARGUE THAT HE HAD REASONABLE CAUSE TO NOT PAY THE EXCISE TAXES.

Based on the numerous and varied arguments Conway has made, he may argue that he had reasonable cause for not paying the excise taxes.  While the Fifth Circuit has recognized that

reasonable cause theoretically may some day be a defense, no taxpayer "has yet carried that pail up the hill." *Bowen v. United States*, 836 F.2d 965, 968 (5th cir. 1988). Since Conway knew about the unpaid taxes and continued to allow payments to creditors other than the United States, including himself, he cannot rely on a purported reasonable cause. The Fifth Circuit has held that reasonable cause is not a defense where a responsible person "knew that withholding taxes were due, but ... made a conscious decision to use corporate funds to pay creditors other than the government." *Logal v. United States*, 195 F.3d at 233.

H.    THE UNITED STATES CANNOT BE ESTOPPED FROM PROCEEDING AGAINST CONWAY.

One of the many arguments made by Conway, not all of which merit a response, is that the United States should be estopped from proceeding against him for the Section 6672 penalties since the United States may have guaranteed loans for **other** airlines. Of course, what the United States did or did not do concerning other airlines, has absolutely nothing to do with Conway's Section 6672 liabilities. In *In re Matter of Taylor*, cited above, Mr. Taylor argued that the IRS should be estopped from collecting Section 6672 against him since no claim for the Section 6672 liabilities had been filed in his personal bankruptcy. The Fifth Circuit, in rejecting his argument, noted what is required to establish estoppel against the United States.

> In order to establish estoppel against the government in this circuit, a party must prove affirmative misconduct by the government as well as the four traditional elements of estoppel. *United States v. Bloom*, 112 F.3d 200, 205 (5th Cir. 1997). The traditional elements of estoppel are "(1) that the party to be estopped was aware of the facts, and (2) intended his act or omission to be acted upon, (3) that the party asserting estoppel did not have knowledge of the facts, and (4) reasonably relied on the conduct of the other to his substantial injury." *Id.*

*In re Matter of Taylor*, 132 F.3d at 263. Based on this precedent, there is no possibility that Conway can prove estoppel against the government in this case.

**VI. CONCLUSION.**

Based on the above undisputed material facts and the applicable precedent, Conway was a responsible person under § 6672.  For the same reasons, his failure to collect, account for, or pay over the excise taxes for the periods at issue was willful.  For all of the foregoing reasons, the United States of America should be granted summary judgment in this lawsuit against him for all quarters at issue, holding that Conway is indebted to the United States in the amount of $8,449,358.93 plus interest and all other statutory accruals.

JOHN MALCOLM BALES
Acting United States Attorney

/s/ Jon E. Fisher
JON E. FISHER
Trial Attorney, Tax Division
State Bar No. 550177-MA
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9730
(214) 880-9774 (facsimile)
Jon.Fisher@USDOJ.gov

ATTORNEYS FOR THE UNITED STATES

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 16, 2009, I electronically filed the foregoing

document with the Clerk of the Court using the ECF system which will send notification of such

filing to the following:

> Todd Welty
> Laura Gavioli
> Sonnenschein Nath & Rosenthal LLP
> 2000 McKinney Avenue, Suite 1900
> Dallas, Texas 75201-1858

/s/ Jon E. Fisher
_____

JON E. FISHER